BERGER MACHINE PRODUCTS, INC.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7427–73—7434–73. Filed June 8, 1977.

*Martin Rosen* and *Sheldon Schwartz,* for the petitioners. *Stanley J. Goldberg* and *Peter Matwiczyk,* for the respondent.

---

[1] Cases of the following petitioners are consolidated herewith: Berger Tube Corp., docket No. 7428–73; E.T.P. Labs, Inc., docket No. 7429–73; E.T.P., Inc., docket No. 7430–73; Berger Industries, Inc., Transferee, docket No. 7431–73; Berger Industries, Inc., Transferee, docket No. 7432–73; Berger Industries, Inc., Transferee, docket No. 7433–73; Berger Industries, Inc., Transferee, docket No. 7434–73.

OPINION

QUEALY, *Judge:* In these cases, respondent determined deficiencies in income tax as follows:

| Petitioner | Docket No. | Year | Amount |
|---|---|---|---|
| Berger Machine Products, Inc. | 7427–73 | 1966 | $124,984 |
| Berger Tube Corp. | 7428–73 | 1966 | 22,472 |
| E.T.P. Labs, Inc. | 7429–73 | 1966 | 25,418 |
| E.T.P., Inc. | 7430–73 | 1966 | 11,626 |
| Berger Industries, Inc., transferee | 7431–73 | 1966 | 124,984 |
| Berger Industries, Inc., transferee | 7432–73 | 1966 | 22,472 |
| Berger Industries, Inc., transferee | 7433–73 | 1966 | 25,418 |
| Berger Industries, Inc., transferee | 7434–73 | 1966 | 11,626 |

The sole question for decision is whether the statutory consolidation of four corporations into a single successor corporation constitutes a reorganization within the meaning of section 368(a)(1)(F)[2] so as to allow the carryback of postconsolidation losses to preconsolidated years.

All of the facts have been stipulated and are so found. The stipulation of facts together with exhibits attached thereto are incorporated herein by this reference.

The petitioner, Berger Machine Products, Inc. (hereinafter referred to as Berger Machine), was a corporation organized under the laws of the State of New York. Its principal place of business was Maspeth, N.Y. Berger Machine filed its corporate income tax return for the taxable period ending December 26, 1966, with the District Director of Internal Revenue, Brooklyn, N.Y.

Berger Tube Corp. (hereinafter referred to as Berger Tube) was a corporation organized under the laws of the State of New York. Its principal place of business was Maspeth, N.Y. Berger Tube filed its corporate income tax return for the taxable period ending December 26, 1966, with the District Director of Internal Revenue, Brooklyn, N.Y.

E.T.P. Labs, Inc. (hereinafter referred to as E.T.P. Labs), was a corporation organized under the laws of the State of New Jersey. Its principal place of business was Metuchen, N.J. E.T.P. Labs filed its corporate income tax return for the

---

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

taxable period ending December 26, 1966, with the District Director of Internal Revenue, Newark, N.J.

E.T.P., Inc. (hereinafter referred to as E.T.P.), was a corporation organized under the laws of the State of New York. Its principal place of business was Maspeth, N.Y. E.T.P. filed its corporate income tax return for the taxable period ending December 26, 1966, with the District Director of Internal Revenue, Brooklyn, N.Y.

Berger Industries, Inc., is a corporation organized under the laws of the State of New York. Berger Industries, Inc., filed its corporate income tax return for the taxable period ending December 29, 1969, with the North-Atlantic Service Center, Andover, Mass.

On or about November 15, 1966, a special meeting of the boards of directors of Berger Machine, Berger Tube, E.T.P. Labs, and E.T.P. was held. At the meeting, the boards resolved that the four predecessor corporations would be consolidated into a single corporation, to be known as Berger Industries, Inc. The plan of consolidation was adopted by the shareholders of the four predecessor corporations on November 16, 1966. Pursuant thereto, the corporations were consolidated into Berger Industries, Inc., effective December 26, 1966.

Since the consolidation, Berger Industries, Inc., has been operating with three tubing divisions, an electrical fittings division, and two lamp and lighting fixture divisions. Each division, except for one tubing division, has a historical predecessor in the consolidated corporate structure which conducted the identical business activities prior to consolidation. The one tubing division which does not have a historical precedent came into existence after the consolidation; this is the Mebane, N.C., plant. The following schedule on p.     is a list of the shareholders, the number of shares held, and the percentage of ownership in the four preconsolidated corporations and Berger Industries, the successor.

In its corporate income tax return for the taxable year ending December 29, 1969, Berger Industries, Inc., reported a taxable loss of $1,363,407. Berger Industries, Inc., seeks to carryback this loss to the preconsolidated corporations pursuant to section 381.

Section 381 provides the rules applicable to carryovers in the case of corporate acquisitions or reorganizations. Pursu-

| Shareholders | Berger Tube | | Berger Machine | | E. T. P. | | E.T.P. Labs | | Berger Industries, Inc. | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of shares | Percent | Number of shares | Percent | Number of shares | Percent | Number of shares | Percent | Number of shares | Percent |
| Kornel Berger | 280 | 18.9 | 1,297 | 25.94 | | | | | 2,439 | 24.394 |
| Estelle Berger | 60 | 4.1 | 121 | 2.42 | | | | | 283 | 2.835 |
| Sidney Berger | 66⅔ | 4.5 | 1,194 | 23.88 | 60 | 33.3 | | | 2,426 | 24.257 |
| Marilyn Steiner | 66⅔ | 4.5 | 1,194 | 23.88 | 60 | 33.3 | | | 2,426 | 24.257 |
| Robert Berger | 66⅔ | 4.5 | 1,194 | 23.88 | 60 | 33.3 | | | 2,426 | 24.257 |
| E.T.P. | | | | | | | ¹180 | 100 | | |
| Berger Machine | 940 | 63.5 | | | | | | | | |
| Totals | 1,480 | 100 | 5,000 | 100 | 180 | 100 | 180 | 100 | 10,000 | 100.00 |

¹ E.T.P. acquired all of the stock in E.T.P. Labs in November 1966. The three shareholders of E.T.P. Labs, Sidney Berger, Robert Berger, and Marilyn Steiner donated their stock to E.T.P. for the purpose of terminating E.T.P. Labs' status as a subch. S corporation.

ant to section 381(b)(3), the acquiring corporation is not entitled to carry back a net operating loss for a subsequent taxable year to a taxable year of the transferor corporation except in the case of an acquisition in connection with a reorganization as described in section 368(a)(1)(F).

The parties agree that in order for Berger Industries, Inc., to be able to carry back its taxable loss of $1,363,407 to the preconsolidated corporations, the transaction pursuant to which its corporations were consolidated into Berger Industries, Inc., must qualify as a reorganization under section 368(a)(1)(F). The respondent contends that the consolidation does not qualify under section 368(a)(1)(F) because of a divergence in the respective interests of the shareholders of the constituent corporations after the merger, as compared with their interests prior to such merger. This divergence is reflected in the schedule appearing above.

The respondent somewhat reluctantly has conceded that a statutory merger or consolidation of two or more operating corporations which qualifies under section 368(a)(1)(A) may also be deemed "a mere change in identity, form, or place of organization" within the meaning of subparagraph (F). However the respondent limits his concession to reorganizations pursuant to which there is complete identity of shareholders and their proprietary interests in the transferor corporations and the acquiring corporations. Rev. Rul. 75–561, 1975–2 C.B. 129.[3]

In Rev. Rul. 75–561, *supra*, respondent prescribes the conditions pursuant to which such reorganizations would qualify under subpart (F), as follows:

In conformance with the rules of these decisions, it is now the position of the Service that the combination of two or more corporations may qualify as a reorganization within the meaning of section 368(a)(1)(F) of the Code, provided certain requirements are satisfied. These requirements are as follows:

---

[3] See, for example, *Movielab, Inc. v. United States,* 204 Ct. Cl. 6, 494 F.2d 693 (1974); *Eastern Color Printing Co. v. Commissioner,* 63 T.C. 27 (1974); *Home Construction Corp. of America v. United States,* 439 F.2d 1165 (5th Cir. 1971), affg. and remanding 311 F.Supp. 830 (S.D. Ala. 1969); *Estate of Stauffer v. Commissioner,* 403 F.2d 611 (9th Cir. 1968), revg. 48 T.C. 277 (1967); *Associated Machine v. Commissioner,* 403 F.2d 622 (9th Cir. 1968), revg. 48 T.C. 318 (1967); *Davant v. Commissioner,* 366 F.2d 874 (5th Cir. 1966), affg. in part and revg. in part 43 T.C. 540 (1965), cert. denied 386 U.S. 1022 (1967).

(1) There must be complete identity of shareholders and their proprietary interests in the transferor corporations and acquiring corporations. In the case of wholly-owned subsidiary-into-parent merger, this requirement will be deemed to be satisfied when the shareholders and their propritary [sic] interests in the parent do not change as a result of the merger;

(2) The transferor corporations and the acquiring corporation must be engaged in the same business activities or integrated activities before the combination; and,

(3) The business enterprise of the transferor corporations and the acquiring corporation must continue unchanged after the combination.

The parties agree that the merger of the constituent corporations into Berger Industries, Inc., meets the conditions prescribed in Rev. Rul. 75–561, except for the requirement of "complete identity of shareholders and their proprietary interests" in the acquiring corporation.

In our opinion, petitioner fails to meet that condition. For example, Kornel Berger held directly 18.9 percent of the stock of Berger Tube and, indirectly, by virtue of his ownership of 25.94 percent of the stock of Berger Machine, an interest equal to an additional 16.47 percent, or a total of 35.37 percent of the stock of Berger Tube. After the reorganization, his interest declined to 24.394 percent. In contrast, Sidney Berger, Marilyn Steiner, and Robert Berger each held directly 4.5 percent of the stock of Berger Tube, and by virtue of their ownership of 23.88 percent of the stock of Berger Machine, an interest equal to an additional 15.16 percent, or a total of 19.66 percent of the stock of Berger Tube. After the reorganization, their interests increased to 24.257 percent.[4]

In this case, the Court may, therefore, disregard the conditional concessions made by respondent in Rev. Rul. 75–561, *supra*. Nevertheless, there remains for decision the question whether, irrespective of such concessions, the statutory merger of these four corporations, each actively engaged in business, qualifies as a reorganization under section 368(a)(1)(F). With respect to this question, the position of this Court was set forth with complete unanimity in *Estate of Stauffer v. Commissioner,* 48 T.C. 277 (1967), and *Associated Machine v. Commissioner,* 48 T.C. 318 (1967). While these

---

[4] Petitioner seeks to invoke the attribution rules in sec. 318 in order to negate these differences. However, the application of the attribution rules in sec. 318 is limited by that section to the provisions enumerated in sec. 318(b). See *Stanton v. United States,* 512 F.2d 13 (3d Cir. 1975).

cases were reversed on appeal by the U. S. Court of Appeals for the Ninth Circuit, we find no basis for any change in the position adopted by this Court as expressed in our opinions in those cases.

Subparagraph (F) is one of six types of transactions that are included within the term "reorganization" as it is defined in section 368(a)(1).[5] Such descriptions are not necessarily mutually exclusive. A transaction which meets the definition of a reorganization in one of the other subparts may nevertheless also constitute a "reorganization" as defined in subparagraph (F), providing that it is a "mere change in identity, form, or place of organization, however effected."

Where two or more operating corporations are merged, whether one into the other or both into a third corporation duly organized for that purpose, the result is more than a *mere change in identity, form, or place of organization.* This is particularly true where, as in the case before the Court, there results a substantial change in the percentage of ownership in the acquiring corporation acquired by the shareholders of the

---

[5] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

(E) a recapitalization; or

(F) a mere change in identity, form, or place of organization, however effected.

merged corporations. While the acquiring corporation by operation of law succeeds to the business of the merged corporations in the case of a statutory merger, and may continue that business unaffected by the merger, the shareholders no longer have the same proportionate interest in each of those businesses which was represented by their stockholdings in the merged corporations.

The recent decision of the U. S. Court of Appeals in *Aetna Casualty & Surety Co. v. United States,* F.2d (2d Cir. 1976), affd. on rehearing F.2d , is not on point. As indicated by the appellate court in its opinion on rehearing, the *Aetna Casualty* case must be limited strictly to its facts. The *Aetna Casualty* case did not present a statutory merger of two or more active corporations.

Accordingly, the transaction whereby the four preconsolidated corporations were merged into Berger Industries, Inc., as the successor corporation, fails to qualify as a mere change in identity, form, or place of organization within the meaning of section 368(a)(1)(F). Pursuant to section 381(b)(3), Berger Industries, Inc., is not entitled to carry back its net operating loss to a taxable year of the merged corporations.

*Decisions will be entered under Rule 155.*
Reviewed by the Court.

STERRETT, *J.,* dissenting: As the majority notes respondent has accepted the view of the Courts of Appeals for the Fifth and Ninth Circuits and the Court of Claims[1] that the combination of two or more operating companies may qualify as an "F" reorganization. The Sixth Circuit[2] has also so held. While I am sympathetic with our earlier opinions to the contrary, I see no useful purpose to be served by putting our finger in the dike after the lowlands are flooded. There are sufficient uncertainties in the tax field to maintain our interest without our refusing to let one issue be resolved.

---

[1] *Davant v. Commissioner,* 366 F.2d 874 (5th Cir. 1966), cert. denied 386 U.S. 1022 (1967); *Estate of Stauffer v. Commissioner,* 403 F.2d 611 (9th Cir. 1968); *Associated Machine v. Commissioner,* 403 F.2d 622 (9th Cir. 1968); *Movielab, Inc. v. United States,* 494 F.2d 693 (Ct. Cl. 1974).

[2] *Performance Systems, Inc. v. United States,* 382 F. Supp. 525 (M.D. Tenn. 1973), affd. per curiam 501 F.2d 1338 (6th Cir. 1974).

Accepting this premise and after comparing the shifts in proprietary interest with those in *Aetna Casualty & Surety Co. v. United States,*    F.2d    (2d Cir. 1976), I am compelled to the conclusion that we are dealing here with a qualifying "F" reorganization within the meaning of section 381. The holders of the proprietary interest remain identical with the only shift being each's degree of minority interest. It can fairly be said that the old shareholders continue to have substantially the same measure of control and proprietary interest in the transferee corporation as they had in the transferor. I would hold for petitioners.